1

2

3 UNITED STATES DISTRICT COURT

4 NORTHERN DISTRICT OF CALIFORNIA

5 GUCCI AMERICA, INC., ET AL.,                    Case No.  C-09-05969 JCS

6

7                    Plaintiffs,                  **[AMENDED] REPORT AND
                                                   RECOMMENDATION RE MOTION FOR
                                                   FINAL DEFAULT JUDGMENT**
8          v.                                      **AGAINST DEFENDANT [Docket No. 28]**

9 WANG HUOQING,

10                    Defendant.
   _____/

11

12 **I.    INTRODUCTION**[1]

13        In this trademark infringement action, Plaintiffs Gucci America, Inc. ("Gucci"), Bottega

14 Veneta International, S.A.R.L. ("Bottega"), and Balenciaga S.A. ("Balenciaga") bring a Motion for

15 Final Default Judgment Against Defendant ("Motion" or "Default Judgment Motion") in which they

16 seek default judgment, an award of statutory damages, costs of the suit and a permanent injunction

17 against Defendant Wang Huoqing.  A hearing on the Motion was held on October 8, 2010. For the

18 reasons stated below, it is recommended that the Motion be GRANTED.

19 **II.   BACKGROUND**

20        Plaintiff Gucci is a New York corporation with its principal place of business located at 685

21 Fifth Avenue, New York, New York 10022.  First Amended Complaint (First Am. Compl.) ¶ 3; *see*

22 *also* Declaration of Stacy Feldman in Support of Plaintiff's Motion for Final Default Judgment

23 Against Defendant ("Feldman Decl.") ¶ 2.  Gucci manufactures and distributes high quality luxury

24 goods, including footwear, belts, sunglasses, handbags, wallets, hats, jewelry, scarves, ties, and

25 umbrellas, which are sold throughout the United States and worldwide.  First Am. Compl. ¶ 3;

26

27        [1]This Report and Recommendation is identical to Docket No. 46 except for the filing date at the
   end of the order, which has been corrected to reflect that the filing date of the Report and
28 Recommendation is January 3, 2011 rather than January 3, 2010.

**United States District Court**
For the Northern District of California

Feldman Decl. ¶ 3.  Gucci operates boutiques within this judicial district.  First Am. Compl. ¶ 3.

Gucci owns twenty-one federally registered trademarks consisting of the word "Gucci" and other

symbols, which are used in connection with the manufacture and distribution of its products (the

"Gucci Marks").  First Am. Compl. ¶ 13; Feldman Decl. ¶ 4; Request for Judicial Notice in Support

of Plaintiffs' Motion for Final Default Judgment ("RJN"), Ex. A ("Gucci Trademark

Registrations").[2]

Plaintiff Bottega is a foreign corporation organized under the laws of Luxembourg with its

principal place of business located at 12 Rue Leon Thyes, Luxembourg L-26-36.  First Am. Compl.

¶ 4.  Bottega manufactures and distributes high quality luxury goods including, but not limited to,

handbags in the United States and worldwide under a federally registered trademark (the "Bottega

Mark").  First Am. Compl. ¶ 15; Feldman Decl. ¶ 5;  RJN, Ex. B ("Bottega Trademark

Registrations").  Bottega operates boutiques within this judicial district.  First Am. Compl. ¶ 4.

Plaintiff Balenciaga is a foreign corporation organized under the laws of France with its

principal place of business located at 15 rue Cassette, Paris, France 75006.  First Am. Compl. ¶ 5.

Balenciaga manufactures and distributes high quality luxury goods including, but not limited to,

handbags under three federally registered trademarks (the "Balenciaga Marks").  First Am. Compl. ¶

17; Feldman Decl. ¶ 6;  RJN, Ex. C ("Balenciaga Trademark Registrations").  Balenciaga operates

boutiques within this judicial district.  First Am. Compl. ¶ 5.

Plaintiffs filed the Complaint in this action on December 21, 2009, naming Wang Huoqing

(also known as Hubert Wang)[3]  and Does 1-10 as Defendants.  Plaintiffs filed a First Amended

Complaint on January 29, 2010.  In the First Amended Complaint, Plaintiffs allege that the

Defendant is an individual who resides in the People's Republic of China, and has registered,

_____

[2]  Plaintiffs request the Court take judicial notice of their United States trademark registrations.  Under Federal Rule of Evidence 201, "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  The Court finds that Plaintiff's trademark registrations meet the requirements of Rule 201.  Accordingly, the Court recommends that Plaintiffs' request for judicial notice be granted.

[3]  Plaintiffs stipulated at the October 8 hearing to removing the alias Hubert Wang from the judgment.  *See also* Plaintiffs' Supplemental Memorandum of Law in Support of Plaintiffs' Motion for Entry of Final Default Judgment p.3 n.2.

United States District Court

For the Northern District of California

established or purchased and currently maintains the following twenty-four domain names: b2do.com, bag2do.cn, bag2do.com, bagdo.com, bagdo.net, bagdo2.com, bagdo2.net, bagpo.com, bagxo.com, bagxp.com, ebagdo.com, ibagdo.com, ibagto.com, my4shop.com, my4shop.net, my5shop.com, my5shop.net, myashop.cn, myashop.com, myashop.net, myhshop.com, mynshop.com, myokshop.com, and myrshop.com.  First Am. Compl. ¶¶ 6, 11 & Schedule A (List of Domain Name Entities).  In the First Amended Complaint, Plaintiffs allege that Defendant's websites offer for sale products incorporating Gucci, Bottega, and Balenciaga Marks that are of a substantially different quality than Plaintiffs' genuine goods.  First Am. Compl. ¶¶ 9, 29.  Plaintiffs further allege that Defendant sells the counterfeit goods with the knowledge that such goods will be mistaken for the genuine products offered for sale by Plaintiffs and that the Defendant's actions will result in the confusion of the relevant trade and consumers, who will believe Defendant's counterfeit goods are the genuine goods originating from, associated with, and approved by Plaintiffs.  *Id.* Plaintiffs allege Defendant is engaging in wrongful counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiffs' rights for the purpose of trading on the goodwill and reputation of Plaintiffs and that these infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and general consuming public as to the origin and quality of the Defendant's Counterfeit Goods bearing the Plaintiffs' Marks.  *Id.* ¶¶ 33, 34.  Plaintiffs further allege Defendant conducts business throughout the United States and this Judicial District through the operation of the domain names listed above.  *Id.* ¶¶ 6, 9.  Finally, Plaintiffs allege they are suffering irreparable injury and damage as a result of Defendant's unauthorized and wrongful use of the Plaintiffs' respective marks. *Id.* ¶ 36.

Plaintiffs allege they have expended substantial time, money and other resources developing, advertising, and otherwise promoting their respective marks.  *Id.* ¶ 21.  Plaintiffs allege they have never assigned or licensed their respective marks to the Defendant in this matter nor have the Plaintiffs' marks ever been abandoned.  *Id.* ¶ 19, 20.  Plaintiffs further allege Defendant has had full knowledge of Plaintiffs' respective ownership of the Plaintiffs' Marks including their respective, exclusive rights to use and license such intellectual property and the goodwill associated therewith

United States District Court
For the Northern District of California

1    and that Defendant does not have, nor has ever had, the right or authority to use Plaintiffs' Marks for

2    any purpose.  *Id*. ¶ 27; Feldman Decl. ¶ 10.  On the basis of these allegations, Plaintiffs assert two

3    claims: (1) trademark counterfeiting and infringement under 15 U.S.C. § 1114, and (2) false

4    designation of origin under 15 U.S.C. § 1125(a).

5         Plaintiffs filed an Application for Order Authorizing Alternate Service of Process on

6    Defendants Pursuant to Federal Rule of Civil Procedure 4(f)(3) on March 9, 2010. ("App. for Alt.

7    Serv.").  In their application, Plaintiffs requested an order allowing for service of process via

8    electronic mail pursuant to Rule 4(f)(3) because they were unable to locate Defendant or serve him

9    in any other manner.  Plaintiffs claimed service of process via electronic mail was appropriate

10   because Defendant: 1) operates anonymously via the Internet using false physical address

11   information in order to conceal his location and avoid liability for his unlawful conduct, and 2) relies

12   solely on electronic communications to operate his business.  App. for Alt. Serv. at 2.

13        Filed concurrently with the Application for Alternate Service was the declaration of Stephen

14   M. Gaffigan.  *See* Declaration of Stephen M. Gaffigan in Support of Plaintiffs' *Ex Parte* Application

15   For Order Authorizing Alternate Service of Process on Defendant Pursuant To Federal Rule Of Civil

16   Procedure 4(f)(3) ("Gaffigan Decl. In Support of App. For Order Authorizing Alt. Service").   In his

17   declaration, Gaffigan stated that he "conducted Whois searches regarding the Subject Domain

18   Names through www.whois.domaintools.com in order to identify the contact data the Defendant

19   provided to his registrars." *Id*. ¶ 3.  Gaffigan included a number of tables displaying for each domain

20   name the Whois contact information and the Whois email address associated with the site.  *Id*. ¶¶ 3,

21   4.  In the declaration and tables, Gaffigan states that the following sites are registered to Defendant

22   Wang Huoqing: b2do.com, bagdo2.net, bagpo.com, ebagdo.com, ibagdo.com, ibagto.com,

23   my4shop.net, my5shop.net, myhshop.com, mynshop.com, myokshop.com, and myrshop.com.  *Id*. ¶

24   3 & Ex. 1.  The declaration and tables further indicate that the following sites are registered to a

25   "Dongshi (Shi Dong)": bag2do.com, bagdo.com, bagdo.net, bagdo2.com, bagxo.com, bagxp.com,

26   my4shop.com, my5shop.com, and myashop.com. and myashop.net.  *Id*.   Finally, the site bag2do.cn

27   is registered to an organization called "chenxi" and is associated with the Registrant Name

28   "yangtao." *Id*.  Gaffigan states that "[a]nalysis of the information provided by the Defendant in

**United States District Court**
For the Northern District of California

1   connection with the Whois registrations for each of the Subject Domain Names, as well as provided

2   by the Defendant on his Internet websites operating thereunder demonstrates the connection between

3   each of the Subject Domain Names and Defendant's control and operation thereof." *Id.* ¶ 5.[4]

4       The Court granted Plaintiffs' application on March 11, 2010. The Summons, Complaint, and

5   First Amended Complaint were served on Defendant via email on March 13, 2010, pursuant to the

6   Court's order authorizing alternate service of process.  Declaration of Anne E. Kearns in Support of

7   Plaintiffs' Motion for Final Default Judgment Against Defendant ("Kearns Decl.") ¶ 2 & Ex. 2

8   (copies of emails sent showing proof of service).  Defendant failed to file a responsive pleading or

9   otherwise appear in this action.  Kearns Decl. ¶ 5.  The clerk entered default pursuant to Rule 55(a)

10  of the Federal Rules of Civil Procedure on April 16, 2010.

11      Plaintiffs now bring a motion for default judgment asking for an award of statutory damages,

12  costs, prejudgment interest and injunctive relief.  In the Motion, Plaintiffs seek default judgment as

13  to twenty-two federally registered trademarks (eighteen marks owned by Gucci, one mark owned by

14  Bottega and three marks owned by Balenciaga) rather than the twenty-five trademarks listed in their

15  First Amended Complaint.[5]

16      In the Motion, Plaintiffs assert that the twenty-four websites listed in the First Amended

17  Complaint, as well as four additional websites - do2bag.com, do2bag.net, myamart.com, and

18  myamart.net - are used by the Defendant, Wang Huoqing, to operate interactive commercial

19  websites that advertise and sell counterfeit, infringing products bearing the Plaintiffs' trademarks.

20  Feldman Decl. ¶¶ 13-15; Gaffigan Decl. In Support of App. For Order Authorizing Alt. Service ¶¶ 3-

21  5 & Exs. 2-25 (showing printouts from the websites).

---

23      [4] At the October 8 hearing, the Court asked Plaintiffs to submit a declaration that states the
24  Defendant's connection to all the websites for which the Plaintiffs seek judgment.  On November 8,
    2010, Plaintiffs submitted: 1) the Plaintiffs' Supplemental Memorandum of Law in Support of Plaintiffs'
    Motion for Entry of Final Default Judgment, 2) the Supplemental Declaration of Stacy Feldman in
25  Support of Plaintiffs' Motion for Final Default Judgment Against Defendant Wang Huoqing, and 3) the
    Supplemental Declaration of Stephen M. Gaffigan in Support of Plaintiffs' Motion for Final Default
26  Judgment Against Defendant Wang Huoqing.  These declarations establish a connection between the
    Defendant and all the websites named in the Motion for Default Judgment.

27      [5] Plaintiffs stipulated at the October 8 hearing that they only intend to seek judgment as to the
28  twenty-two trademarks listed in their RJN and in the Motion.

United States District Court

For the Northern District of California

In support of the Default Judgment Motion, Plaintiffs filed the declaration of investigator Robert Holmes ("Holmes") of IPCybercrime.com, LLC, who was retained to investigate the sale of counterfeit products by Defendant.  Holmes Decl. In Support of FDJ ¶ 3.  Holmes states that he accessed the Internet website operating under the domain name bag2do.cn and completed a pretextual purchase of a Gucci branded wallet from that website.  Holmes Decl. In Support of App. For Order Authorizing Alt. Service ¶¶ 11, 12 and Exs. 1, 2.  Holmes requested that the wallet from bag2do.cn be sent to his address in San Jose, California and he received a confirmation of his purchase via email.  Holmes Decl. In Support of FDJ ¶ 5.  Holmes states that he received a Gucci branded wallet from the bag2do.cn website and submitted the wallet to Plaintiffs' representative, Stacy Feldman, who is Gucci's Intellectual Property Coordinator.  *Id*. ¶ 6, Ex. 1 (photographs of the wallet and shipping label from Holmes' online purchase).  Feldman states that she examined the wallet and determined it to be a non-genuine Gucci branded product.  Feldman Decl. In Support of FDJ ¶ 13.

According to Robert Holmes, on April 12, 2010, subsequent to his purchase of the wallet through the bag2do.cn website, he received an email advertisement from the email address "julia4868@gmail.com."  Holmes Decl. In Support of FDJ ¶ 7 & Ex. 2.  The email stated that www.bag2do.cn was "closing all of [its] websites" and opening two new websites, do2bag.com and do2bag.net, where one could find "the products on these two websites as usual."  *Id*.  Holmes states he provided a copy of this email to Plaintiffs' counsel, Stephen M. Gaffigan.  *Id*.  In a separate declaration, Gaffigan states that he subsequently determined the Internet websites operating under the domain names do2bag.com and do2bag.net as well as two additional websites, myamart.com and myamart.net, are operated by the Defendant and are used by the Defendant to offer for sale Gucci, Bottega and Balenciaga branded products.  Gaffigan Decl. In Support of FDJ ¶ 4 and Comp. Exs. 1, 2.  Gaffigan explains in his declaration the four new websites each use the same Google Analytics tracking code (UA-15639021) and are all located in the IP range 174.133.40.22X (where X is a variable number).  Gaffigan Decl. In Support of FDJ ¶ 4.  Plaintiffs claim that where multiple sites employ a Google tracking code with the same base number, it is almost always the case that those domains are all tracked from a single account, and thus, have a common operator.  *Id*. at 3 n.2.

6

**United States District Court**

For the Northern District of California

1   Plaintiffs claim that where only a very small number of sites are hosted on a server, or in cases

2   where sites are hosted on servers with sequential numbers, there is a strong likelihood that these sites

3   are connected, as the hosting servers are either privately owned or exclusively leased servers.  *Id.* at

4   3, n.3 & Exhibit 1 (printouts showing the common Google Analytics tracking codes and common IP

5   addresses for do2bag.com, do2bag.net, myamart.com, and myamart.net).

6          Plaintiffs also offer a declaration by Ms. Feldman addressing the counterfeit nature of the

7   products offered for sale by the Defendant on the Subject Domain Names.  Feldman Decl. in Support

8   of FDJ ¶¶ 13-15.  Ms. Feldman reviewed and visually inspected printouts of  the items bearing the

9   Gucci, Bottega and Balenciaga Marks offered for sale on the Defendant's Internet websites and

10  determined the products offered for sale to be non-genuine Gucci, Bottega and Balenciaga products.

11  Feldman Decl. ¶ 14; Gaffigan Decl. In Support of FDJ, Ex. 2 (print-outs reviewed by Feldman).

12         Finally, in support of the Default Judgment Motion, Plaintiffs provide a declaration by

13  another IPCybercrime.com investigator, Jason Holmes, stating that he conducted a search of the

14  Department of Defense Manpower Data Center and determined that Wang Huoqing is not on active

15  military duty.  Declaration of Jason Holmes in Support of Plaintiffs' Motion for Final Default

16  Judgment Against Defendant ¶ 4 &. Ex. 1.

17         In the Motion, Plaintiffs request the following relief: 1) an injunction prohibiting Wang

18  Huoqing[6] from infringing Plaintiffs' trademarks; 2) an order transferring the twenty-eight domain

19  names discussed above to Plaintiffs' control or cancelling them; 3) an award of statutory damages

20  against Defendant in the total amount of $606,000.00, that is, $594,000.00 to be awarded to Gucci,

21  $3,000.00 to be awarded to Bottega, and $9,000.00 to be awarded to Balenciaga; 4) $700.00 for

22  costs of the suit, to be divided equally among the three Plaintiffs; and 5) prejudgment interest from

23  the date of filing of the action.  *See* Proposed Judgment and Permanent Injunction.

24         At the October 8 hearing, the Court asked Plaintiffs to provide a declaration that establishes

25  the basis upon which Plaintiffs believe all the sites listed in their Motion for Default Judgment are

26

27         [6] Plaintiffs originally requested the injunction also include the alias Hubert Wang, but stipulated
    to dropping the alias from the order.  Plaintiffs' Supplemental Memorandum of Law in Support of
28  Plaintiffs' Motion for Entry of Final Default Judgment p.3 n.2.

**United States District Court**
For the Northern District of California

1   owned or controlled by the Defendant.  In response, Plaintiffs submitted the Plaintiffs' Supplemental

2   Memorandum of Law in Support of Plaintiffs Motion for Entry of Final Default Judgment, the

3   Supplemental Declaration of Stacy Feldman in Support of Plaintiffs' Motion for Final Default

4   Judgment Against Defendant Wang Huoqing, and the Supplemental Declaration of Stephen M.

5   Gaffigan in Support of Plaintiffs' Motion for Final Default Judgment Against Defendant Wang

6   Huoqing.  *See* Docket No. 44  In these declarations Plaintiffs have identified specific instances of

7   Defendant's infringement in each website for which they seek default judgment and have established

8   the basis for their belief that the Defendant owns or controls all twenty-eight websites at issue in this

9   case.

10  **III.    ANALYSIS**

11      **A.    Personal Jurisdiction**

12      As a preliminary matter, this Court has an affirmative obligation to determine whether or not

13  it has personal jurisdiction over Defendant Wang Huoqing, who is alleged to reside and/or conduct

14  substantial business in the People's Republic of China.  *See In re Tuli*, 172 F.3d 707, 712 (9th Cir.

15  1999) (holding that the court properly raised sua sponte the question of whether there was personal

16  jurisdiction over Iraq before determining whether default judgment should be entered).  In *Tuli*, the

17  Ninth Circuit explained that where a plaintiff seeks default judgement, the court may not assume the

18  existence of personal jurisdiction, even though ordinarily personal jurisdiction is a defense that may

19  be waived, because a judgment in the absence of personal jurisdiction is void.  *Id.*  Where there are

20  questions about the existence of personal jurisdiction in a default situation, the court should give the

21  plaintiff the opportunity to establish the existence of personal jurisdiction.  *Id.*

22      Personal jurisdiction in this District is proper provided it is consistent with the California

23  long-arm statute and if it comports with due process of law.  *Boschetto v. Hansing*, 539 F.3d 1011,

24  1021-22 (9th Cir. 2008).  Under California's long-arm statute, Cal. Code Civ. Proc. § 410.10, federal

25  courts in California may exercise jurisdiction to the extent permitted by the Due Process Clause of

26  the Constitution.  *Id.*; *see also Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements, Ltd.*, 328

27  F.3d 1122, 1129 (9th Cir. 2003) (citing Cal. Code Civ. Proc. §410.10).  The Due Process Clause

28  allows federal courts to exercise jurisdiction where either: 1) the defendant has had continuous and

1  systematic contacts with the state sufficient to subject him or her to the general jurisdiction of the

2  court; or 2) the defendant has had sufficient minimum contacts with the forum to subject him or her

3  to the specific jurisdiction of the court.  *Panavision v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998).

4  The courts apply a three-part test to determine whether specific jurisdiction exists:

> (1) The nonresident defendant must do some act or consummate some transaction with the
> forum or perform some act by which he purposefully avails himself of the privilege of
> conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or results from the defendant's forum-related
> activities; and (3) exercise of jurisdiction must be reasonable.

8  *Id.*  (quoting *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995) (quotation

9  marks omitted)).  As discussed below, the factual allegations and evidence support a finding of

10  specific jurisdiction over the Defendant in this case, Wang Huoqing.[7]

### 1.    Purposeful Availment

12  In order to satisfy the first prong of the test for specific jurisdiction, a defendant must have

13  either purposefully availed itself of the privilege of conducting business activities within the forum

14  or purposefully directed activities toward the forum.  *Id.*  Purposeful availment typically consists of

15  action taking place in the forum that invokes the benefits and protections of the laws of the forum,

16  such as executing or performing a contract within the forum.  *Schwarzenegger v. Fred Martin Motor*

17  *Co.*, 374 F.3d 797, 802 (9th Cir. 2004).  To show purposeful availment, a plaintiff must show that

18  the defendant "engage[d] in some form of affirmative conduct allowing or promoting the transaction

19  of business within the forum state."  *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th

20  Cir. 1990).  A showing that a defendant purposefully directed his conduct toward a forum state, by

21  contrast, usually consists of evidence of the defendant's actions outside the forum state that are

22  directed at the forum, such as the distribution in the forum state of goods originating elsewhere.

23  *Schwarzenegger*, 374 F.3d at 803 (*citing Keeton v. Hustler Magazine, Inc.*,  465 U.S. 770 (1984)

---

25   [7]   Because Plaintiffs have not pointed to facts indicating that Defendant's contacts with
26  California are continuous and systematic, and because this Court concludes that specific jurisdiction
   exists, the Court need not reach the question of whether it has general jurisdiction over the Defendant.
27  The Court notes, however, that the standard for establishing general jurisdiction is high, requiring that
   a defendant's contacts approximate physical presence. *Bancroft & Masters v. Augusta Nat'l Inc.*, 223
28  F.3d 1082, 1086 (9th Cir. 2000).  Based on the facts alleged in the First Amended Complaint, it does
   not appear that this standard is met.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1  (finding purposeful direction where defendant published magazines in Ohio and circulated them in

2  the forum state, New Hampshire)).  Purposeful direction is determined using an "effects test."  *Id*.  A

3  defendant "purposefully directs" activity at a forum state when he: (a) commits an intentional act,

4  that is (b) expressly aimed at the forum state and that (c) causes harm that he knows is likely to be

5  suffered in that jurisdiction.  *Id*.

6          "In the internet context, the Ninth Circuit utilizes a sliding scale analysis under which

7  'passive' websites do not create sufficient contacts to establish purposeful availment, whereas

8  interactive websites may create sufficient contacts, depending on how interactive the website is."

9  *Jeske v. Fenmore*, 2008 WL 5101808, at *4 (C.D. Cal. Dec. 1, 2008) (citing *Boschetto v. Hansing*,

10  539 F.3d 1011, 1018 (9th Cir. 2008)).  "[T]he likelihood that personal jurisdiction can be

11  constitutionally exercised is directly proportionate to the nature and quality of the commercial

12  activity that an entity conducts over the Internet."  *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414,

13  419 (9th Cir.1997) (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D.

14  Pa. 1997)).  Personal jurisdiction is appropriate where an entity is conducting business over the

15  internet and has offered for sale and sold its products to forum residents.  *See Stomp, Inc. v. NeatO,

16  LLC*, 61 F. Supp. 2d 1074, 1077-78 (C.D. Cal. 1999) (holding that the exercise of personal

17  jurisdiction was appropriate based on the "highly commercial" nature of defendant's website); *see

18  also Allstar Marketing Group, LLC, v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1122 (C.D.

19  Cal. 2009) (holding that the exercise of personal jurisdiction was appropriate because "by operating

20  a highly commercial website through which regular sales of allegedly infringing products are made

21  to customers in [the forum state], [the defendant has] purposefully availed [itself] of the benefits of

22  doing business in this district").

23          Here, the allegations and evidence presented by Plaintiffs in support of the Motion are

24  sufficient to show purposeful availment on the part of Defendant Wang Huoqing.  Plaintiffs have

25  alleged that Defendant operates "fully interactive Internet websites operating under the Subject

26  Domain Names" and have presented evidence in the form of copies of web pages showing that the

27  websites are, in fact, interactive.  First Am. Compl. ¶ 1; Gaffigan Decl. In Support of FDJ & Exs. 1-

28  3 (printouts from some of the websites displaying counterfeit merchandise for sale).  Additionally,

**United States District Court**
For the Northern District of California

1  Plaintiffs allege Defendant is conducting counterfeiting and infringing activities within this Judicial

2  District and has advertised and sold his counterfeit goods in the State of California.  First Am.

3  Compl. ¶¶ 1, 3-6, 9, 31.  Plaintiffs have also presented evidence of one actual sale within this

4  district, made by investigator Robert Holmes from the website bag2do.cn.  Holmes Decl. In Support

5  of FDJ ¶¶ 5-6.  Finally, Plaintiffs have presented evidence that Defendant Wang Huoqing, own or

6  controls the twenty-eight websites listed in the Motion for Default Judgment.  Supplemental

7  Declaration of Stacy Feldman in Support of Plaintiffs' Motion for Final Default Judgment Against

8  Defendant Wang Huoqing ("Supp. Feldman Decl.") pp. 2-18; Gaffigan Decl. in Support of App. For

9  Order Authorizing Alt. Service ¶ 3; *See Gray & Co.*, 913 F.2d at 770.  Such commercial activity in

10  the forum amounts to purposeful availment of the privilege of conducting activities within the

11  forum, thus invoking the benefits and protections of its laws.  *Schwarzenegger*, 374 F.3d at 802

12  (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  Accordingly, the Court concludes that

13  Defendant's contacts with California are sufficient to show purposeful availment.

14  **2.  Claims Arise out of Forum Related Activities**

15  The second prong of the test for specific jurisdiction requires that the claim be one that arises

16  out of or relates to the defendant's activities in the forum.  *Panavision*, 141 F.3d at 1320.  This

17  requires a showing of "but for" causation.  *Id.* at 1322 ("We must determine if the plaintiff

18  Panavision would not have been injured 'but for' the defendant Toeppen's conduct directed toward

19  Panavision in California.").  Here, Defendant's contacts with the forum are his sales of infringing

20  and counterfeit products to customers in this state.  Therefore, the Court finds that "but for"

21  Defendant's infringing activity, Plaintiffs would not have been injured.  Accordingly, the Court

22  concludes that the second requirement for specific jurisdiction is satisfied.

23  **3.  Reasonableness of Exercise of Jurisdiction**

24  The third prong of the test for specific jurisdiction provides that the exercise of jurisdiction

25  must comport with fair play and substantial justice.  *Id.* at 1320.  To determine whether the exercise

26  of jurisdiction over a non-resident defendant comports with fair play and substantial justice, a court

27  must consider seven factors:

28

(1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Core-Vent Corp. v. Nobel Indus.*, 11 F.3d 1482, 1487-88 (9th Cir. 1993).  There is a presumption that the exercise of jurisdiction is reasonable when the first two prongs of the specific jurisdiction test have been met; at that point, the burden shifts to the defendant to establish unreasonableness. *See Schwarzenegger*, 374, F.3d at 802 (stating that after the plaintiff meets his burden to satisfy the first two prongs, the burden then shifts to the defendant to present a "compelling case" that jurisdiction is unreasonable).  The reasonableness factors enumerated in *Core-Vent* weigh in favor of finding that the exercise of jurisdiction comports with fair play and substantial justice in this case.

First, the forum state has a strong interest in adjudicating the dispute.  Although none of the parties is a California citizen, Plaintiffs allege that Defendant sells the infringing products to California citizens, that Plaintiffs operate boutiques in this forum, and that they have suffered damages as a result of Defendant's infringing activities in this forum.  *See Nissan Motor Co. Ltd. v. Nissan Computer Corp.*, 89 F. Supp. 2d 1154, 1161 (C.D. Cal. 2000) ("California has a strong interest in protecting its citizens from trademark infringement and consumer confusion").  This factor thus favors a finding that the exercise of jurisdiction is reasonable.

Second, the extent of Defendant's purposeful interjection into the forum state's affairs is unknown as Plaintiffs have not alleged or presented evidence of the amount of infringing products Defendant sells to California customers.  Therefore this factor is neutral.

Third, the burden on the Defendant, as a resident of China, to litigate in California is significant, but the inconvenience is not so great as to deprive him of due process, particularly given Defendant's purposeful availment of the benefits of conducting business within the forum.  *See Panavision*, 141 F.3d at 1323 ("A defendant's burden in litigating in the forum is a factor in the assessment of reasonableness, but unless the 'inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction.'").

United States District Court

For the Northern District of California

1    Fourth, consideration of the most efficient judicial resolution is "no longer weighed heavily

2    given the modern advances in communication and transportation," therefore this factor is also

3    neutral because there may be witnesses and evidence located in both California and China.  *Id.*

4    Fifth, with respect to the existence of an alternative forum, Defendant has not come forward

5    to request an alternative forum and the Court is unaware of whether there is such a forum.  This

6    factor is neutral.

7    Sixth, with respect to the importance of the forum to the plaintiff's interest in convenient and

8    effective relief, courts generally give little weight to a plaintiff's inconvenience.  *See Id.*  However,

9    if a forum is available in China, it would be costly and inconvenient for Plaintiffs to litigate in

10   China, therefore this factor weighs slightly in Plaintiffs' favor.

11   Finally, regarding the extent to which the exercise of jurisdiction would conflict with the

12   sovereignty of Defendant's state, "[l]itigation against an alien defendant creates a higher

13   jurisdictional barrier than litigation against a citizen from a sister state because important

14   sovereignty concerns exist."  *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d

15   1122, 1133 (9th Cir. 2003) (quoting *Sinatra v. Nat'l Enquirer*, 854 F.2d 1191, 1199 (9th Cir. 1988)).

16   While this factor weighs in favor of the Defendant, it is not sufficient to defeat the Court's exercise

17   of personal jurisdiction where the other *Core-Vent* factors support a finding of personal jurisdiction.

18   Balancing these seven factors, the Court concludes that the exercise of jurisdiction over the

19   Defendant is reasonable.

20       **B.      Legal Standard Regarding Entry of Default Judgment**

21   Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, the court may enter a

22   default judgment where the clerk, under Rule 55(a), has previously entered the party's default based

23   upon failure to plead or otherwise defend the action.  Fed. R. Civ. P. 55(b).  Once a party's default

24   has been entered, the factual allegations of the complaint, except those concerning damages, are

25   deemed to have been admitted by the non-responding party. Fed. R. Civ. Proc. 8(b)(6); *see also*

26   *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir.1977) (stating the general rule that "upon

27   default[,] the factual allegations of the complaint, except those relating to the amount of damages,

28

will be taken as true").  A defendant's default, however, does not automatically entitle the plaintiff

to a court-ordered default judgment.  *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986).

"Granting or denying a motion for default judgment is a matter within the court's discretion."

*Landstar Ranger, Inc. v. Parth Enterprises, Inc.*, 2010 WL 2889490, at *2 (C.D. Cal. Jul.19, 2010)

(quoting *Elektra Entertainment Group Inc. v. Bryant*, No. CV 03-6381 GAF (JTLx), 2004 WL

783123, at *1 (C.D. Cal. Feb.13, 2004)).  The Ninth Circuit has directed that courts consider the

following factors in deciding whether to enter default judgment:

> (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning the material facts; (6) whether defendant's default was the product of excusable neglect; and (7) the strong public policy favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir.1986).

**C.**   ***Eitel* Factors**

**1.   Possibility of Prejudice to Plaintiff**

The first Eitel factor considers whether plaintiffs will suffer prejudice if a default judgment

is not entered.  *Pepsico, Inc. v. California Security Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal.

2002).  To the extent that Defendant has failed to appear in, or otherwise defend this action,

Plaintiffs will be left without a remedy if default judgment is not entered in their favor.  Therefore,

this factor weighs in favor of entry of default judgment.

**2.   Merits of Plaintiffs' Substantive Claim and Sufficiency of the Complaint**

The second and third *Eitel* factors weigh the substantive merit of the plaintiff's claims and

the sufficiency of the pleadings to support these claims.  In order for these factors to weigh in favor

of entering a default judgment, the plaintiffs must state a claim upon which they may recover.

*Pepsico*, 238 F. Supp. 2d at 1175; *see also Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)

(stating that the allegations in the complaint must state a claim upon which the plaintiffs may

recover).

**a.   Trademark Counterfeiting & Infringement**

To prevail on a claim for trademark infringement, a holder of a registered service mark must

show that another person is using: (1) any reproduction, counterfeit, copy or colorable imitation of

United States District Court

For the Northern District of California

1  a mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale,

2  offering for sale, distribution or advertising of any goods; (5) where such use is likely to cause

3  confusion, or to cause a mistake or to deceive. 15 U.S.C. § 1114(1)(a);  *Century 21 Real Estate*

4  *Corp. v. Sanlin*, 846 F.2d 1175, 1178 (9th Cir. 1988).  Neither intent nor actual confusion are

5  necessary to establish a likelihood of confusion.  *Id.*  The critical determination is, "whether an

6  alleged trademark infringer's use of a mark creates a likelihood that the consuming public will be

7  confused as to who made that product."  *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir.

8  2008) (quoting *Brother Records, Inc. v. Jardine*, 318 F.3d 900, 908 (9th Cir. 2003)) (quotation

9  marks omitted).

10       Here, Plaintiffs have alleged that they are the respective owners of Gucci, Bottega, and

11  Balenciaga Marks that are registered with the United States Patent and Trademark Office and they

12  have provided trademark registrations in support of that assertion.  First Am. Compl. ¶¶ 3-5;

13  Feldman Decl. ¶¶ 4-6; RJN, Exs. A, B, C.  Plaintiffs have also alleged that Defendant Wang

14  Huoqing uses the Marks to sell counterfeit products bearing the Gucci, Bottega, and Balenciaga

15  Marks over the internet, and that these activities are causing confusion, mistake, and deception

16  among members of the trade and the general consuming public as to the origin and quality of

17  Defendant's counterfeit goods.  First Am. Compl. ¶¶ 9, 27-29, 34.  Further, Plaintiffs have

18  presented evidence that the twenty-eight websites listed in the Motion for Default Judgment are

19  owned or controlled by Wang Huoqing and offer for sale non-authentic products that carry

20  Plaintiffs' trademarks.  Finally, Plaintiffs have presented evidence that they actually purchased an

21  item offered on one of the websites controlled by Wang Huoqing and determined that it infringed.

22       Plaintiffs have presented the trademark registrations for the Gucci, Bottega, and Balenciaga

23  Marks in support of the Motion.  *See* RJN, Exs. A, B, C.  This evidence establishes that the

24  Plaintiffs are the owners of the respective trademarks presented in the RJN.  In addition, from Stacy

25  Feldman's supplemental declaration, it appears the Plaintiffs' Marks have been infringed upon by

26  Defendant.  *See* Supp. Feldman Decl. ¶¶ 5-7 (stating Feldman personally reviewed printouts

27  downloaded by Attorney Gaffigan and noted specific examples of the Defendant's infringement of

28

the Plaintiffs' Marks on each of his Internet websites).  Therefore, this factor weighs in favor of granting a default judgment.

### b.       False Designation of Origin

Plaintiffs allege that Defendant's use of the Gucci, Bottega, and Balenciaga marks constitutes false designation of origin in violation of section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).  That section provides as follows:

> Any person who, or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which -
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

In order to prevail in an action for false designation of origin, a plaintiff must show that: 1) the terms or logos in question are valid and protectable trademarks; 2) the plaintiff owns these marks as trademarks; 3) the plaintiff used these marks in commerce; and 4) the defendants "used terms or designs similar to plaintiff's marks without the consent of the plaintiff in a manner that is likely to cause confusion among ordinary purchasers as to the source of the goods." *Chimney Safety Inst. Of Am. v. Chimney King*, 2004 WL 1465699, at *2 (N.D. Cal. May 27, 2004) (citing *Brookfield Commc'ns, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1046-47 n.8 (9th Cir. 1999)).

Plaintiffs have presented evidence satisfying all of the elements listed above with respect to the twenty-two Gucci, Bottega, and Balenciaga Marks contained in the RJN.  First, Plaintiffs have presented evidence that they own the twenty-two Marks, thus satisfying the first two elements of the claim.  *See* RJN Exs. A, B, C.  Second, Plaintiffs have presented evidence that they use the marks in commerce, thus satisfying the third element of the claim.  Feldman Decl. in Support of

**United States District Court**
For the Northern District of California

FDJ ¶¶ 7, 9.  Third, Plaintiffs have presented evidence the Defendant used designs that are copies of or substantially similar to the Marks without the consent of the Plaintiffs and this use is likely to cause confusion among ordinary purchasers as to the source of the products.  Feldman Decl. in Support of FDJ ¶ 14.  Therefore, this factor weighs in favor of granting a default judgment on Plaintiffs' false designation of origin claim.

### 3.   Amount at Stake

The fourth *Eitel* factor balances the amount of money at stake in the claim in relation to the seriousness of the defendant's conduct.  *Eitel*, 782 F.2d at 1471-72.

Here, Plaintiffs request $606,000.00 in statutory damages against Defendant, as well as an award of costs and prejudgment interest.  This amount, while significant, is commensurate with the seriousness of Defendant's alleged misconduct, namely, engaging in willful infringement of numerous trademarks owned by Plaintiffs.  Therefore, the Court finds that this factor favors entry of default judgment.

### 4.   Possibility of Dispute

The fifth *Eitel* factor weighs the possibility that material facts may be in dispute.  *Eitel* 782 F.2d at 1471-72.  Here, because Defendant has failed to respond in this action, there is an absence of material facts in dispute in the record from which the Court may weigh this factor.  Therefore, this factor is neutral.

### 5.   Possibility of Excusable Neglect

The sixth *Eitel* factor weighs whether the defendant's default may have been the product of excusable neglect.  *Id.*  Here, Plaintiffs have properly served the Defendant in this action pursuant to the Court's Order Authorizing Alternate Service of Process on Defendant Pursuant to Federal Rule of Civil Procedure 4(f)(3).  Holmes Decl. In Support of FDJ. ¶ 8; Holmes Decl. In Support of App. For Order Authorizing Alt. Service ¶ 14 (stating Holmes received Return Receipts from ReadNotify.com, indicating his pretextual messages had been opened, for emails sent to the addresses: huoqing@gmail.com, dongshi007@gmail.com, cnreg@hichina.com, bagdo.com@gmail.com, myashop@gmail.com, bagpo.com@gmail.com, my4shop@gmail.com, and julia3318@gmail.com).  There is no evidence in the record that Defendant's failure to appear

United States District Court

For the Northern District of California

and otherwise defend was the result of excusable neglect.  Rather, Defendant failed to appear after being served with the Complaint in this action, indicating that his failure to appear was willful.  Therefore, this factor weighs in favor of entry of default judgment.

### 6. Policy for Deciding Cases on the Merits

The seventh *Eitel* factor balances the policy consideration that whenever reasonably possible, cases should be decided upon their merits.  *Eitel*, 782 F.2d at 1472.  The existence of Rule 55(b) though, indicates, that this preference towards disposing of cases on the merits is not absolute.  *Pepsico*, 238 F. Supp. 2d at 1177.  Here, because Defendant has failed to respond or otherwise defend himself in this action, deciding the case upon the merits is not possible and this factor is therefore neutral.

As discussed above, *Eitel* factors 1, 2, 3, 4, and 6 weigh in favor of granting the final default judgment and factors 5 and 7 are neutral.  Therefore, the *Eitel* analysis weighs in favor of granting final default judgment.  Accordingly, it is recommended that default judgment be entered against the Defendant on Plaintiffs' trademark infringement and false designation of origin claims.

### D. Remedies

#### 1. Injunctive Relief

Plaintiffs have requested the Court grant two forms of injunctive relief.  First, Plaintiffs request that the Court grant a permanent injunction barring Defendant from further interfering with Plaintiffs' businesses.  Proposed Judgment and Permanent Injunction at 2-4.  Second, Plaintiffs request the Court order the Subject Domain Names transferred to Plaintiffs.  *Id.* at 4.

Injunctive relief is available to prevent future trademark infringement under the Lanham Act.  15 U.S.C. § 1116.  "Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement."  *Century 21*, 846 F.2d at 1180.  In order to obtain injunctive relief, a plaintiff must show either: (1) probable success on the merits and the possibility of irreparable harm, or (2) the existence of serious questions on the merits and the balance of hardships tipping in its favor.  *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 612 (8th Cir. 1989).  In an action for

trademark infringement, "once the plaintiff establishes a likelihood of confusion, it is ordinarily presumed that the plaintiff will suffer irreparable harm if injunctive relief is not granted." *Id.*

Here, Plaintiffs request entry of the following injunction: [8]

Defendant and his respective officers, agents, servants, employees, and attorneys, and all persons acting in concert and participation with him are hereby permanently restrained and enjoined from:

(a) manufacturing or causing to be manufactured, importing, advertising, or promoting, distributing, selling or offering to sell counterfeit and infringing goods using the Plaintiffs' Marks;

(b) using the Plaintiffs' Marks in connection with the sale of any unauthorized goods;

(c) using any logo, and/or layout which may be calculated to falsely advertise the services or products of Defendant offered for sale or sold via the Subject Domain Names[9] and/or any other website or business, as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiffs;

(d) falsely representing himself as being connected with Plaintiffs, through sponsorship or association;

(e) engaging in any act which is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendant offered for sale o[r] sold via the Subject Domain Names and/or any other website or business are in any way endorsed by, approved by, and/or associated with Plaintiffs;

(f) using any reproduction, counterfeit, copy or colorable imitation of the Plaintiffs' Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendant via the Subject Domain Names and/or any other website or business, including, without limitation, footwear, belts, sunglasses, handbags, wallets, hats, jewelry, including, [sic] necklaces and bracelets, scarves, ties, and/or umbrellas;

(g) affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent goods offered for sale or sold by Defendant via the Subject Domain Names and/or any other website or business, as being those of Plaintiffs or in any way endorsed by Plaintiffs;

(h) offering such goods in commerce;

(i) otherwise unfairly competing with Plaintiffs;

---

[8] The language of the injunctive relief is taken verbatim from the Plaintiffs' Proposed Order except that the Court has corrected a few minor typographical errors.

[9] In the Proposed Order, Plaintiffs define "Subject Domain Names" as including the following: b2do.com, bag2do.cn, bag2do.com, bagdo.com, bagdo.net, bagdo2.com, bagdo2.net, bagpo.com, bagxo.com, bagxp.com, do2bag.com, do2bag.net, ebagdo.com, ibagdo.com, ibagto.com, my4shop.com, my4shop.net, my5shop.com, my5shop.net, myamart.com, myamart.net, myashop.cn, myashop.com, myashop.net, myhshop.com, mynshop.com, myokshop.com, and myrshop.com.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

(j) secreting, destroying, altering, removing, or otherwise dealing with the unauthorized products or any books or records which contain any information relating to the importing, manufacturing, producing, distributing, circulation, selling, marketing, offering for sale, advertising, promoting, renting or displaying of all unauthorized products which infringe the Plaintiffs' Marks; and

(k) effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth above.

Proposed Judgment and Permanent Injunction at 2-4.  Plaintiffs have also requested transfer of the

Domain names as follows:

(a) In order to give practical effect to the Permanent Injunction, the Subject Domain Names are hereby ordered to be immediately transferred by Defendant, his assignees and/or successors in interest or title, and the Registrars to Plaintiffs' control.  To the extent the current Registrars do not facilitate the transfer of the domain names to Plaintiffs' control within ten (10) days of receipt of this judgment, the United States based Registry shall, within thirty (30) days, transfer the Subject Domain Names to a United States based Registrar of Plaintiffs' choosing, and that Registrar shall transfer the Subject Domain Names to Plaintiffs;

(b) Upon Plaintiffs' request, the top level domain (TLD) Registries for the Subject Domain Names shall place the Subject Domain Names on Registry Hold status within thirty (30) days of receipt of this Order, thus removing them from the TLD zone files maintained by the Registries which link the Subject Domain Names to the IP addresses where the associated websites are hosted[.] [10]

In support of their request for injunctive relief, Plaintiffs provided evidence of Defendant's

infringing activity, thereby showing a probability of success on the merits.  Plaintiffs have also

established a likelihood of confusion by showing Defendant's use of counterfeit Gucci, Bottega,

and Balenciaga Marks, giving rise to a presumption that Plaintiffs will suffer irreparable harm if

---

[10]   In their original proposed order, Plaintiffs also requested that the following provision be included:

(c) Upon Plaintiffs' request, Defendant, those acting in concert with him, and those with notice of the Injunction, including any Internet search engines, including Google, Yahoo! and Bing, Web hosts, domain-name registrars, and domain-name registries that are provided with notice of the Injunction, shall be and are hereby restrained and enjoined from facilitating access to any or all websites through which Defendant engages in the sale of counterfeit and infringing goods using the Plaintiffs' Marks.

However, in their supplemental memorandum, Plaintiffs stipulated they are no longer requesting the inclusion of this provision in the Court's order.   Plaintiffs Supplemental Memorandum of Law in Support of Plaintiffs' Motion for Entry of Final Default Judgment p. 9.

United States District Court

For the Northern District of California

1   injunctive relief is not granted.  Further, Plaintiffs assert that they have invested substantial time

2   and money in advertising and promoting the Gucci, Bottega, and Balenciaga Marks, as a result of

3   which Plaintiffs' marks have become widely recognized and Plaintiffs have developed reputation

4   and goodwill.  *See Phillip Morris USA, Inc. v. Shalabi*, 352 F. Supp. 2d 1067 (C.D. Cal. 2004)

5   (considering plaintiff's investment in advertising and promoting, reputation, and goodwill in

6   finding irreparable harm).  Because Plaintiffs will suffer irreparable injury to their reputation and

7   goodwill if injunctive relief is not granted, the Court recommends that Plaintiffs' request for a

8   permanent injunction be granted.

9        Having determined that Plaintiffs are entitled to injunctive relief, the Court must determine

10  the appropriate scope of the injunctive relief.  Rule 65 of the Federal Rules of Civil Procedure

11  requires that "[e]very order granting an injunction . . . shall set forth the reasons for its issuance;

12  shall be specific in terms; [and] shall describe in reasonable detail . . . the act or acts sought to be

13  restrained." Fed. R. Civ. P. 65(d).  Generally, "an injunction must be narrowly tailored to remedy

14  only the specific harms shown by the plaintiffs rather than to enjoin all possible breaches of the

15  law." *Iconix, Inc. v. Tokuda*, 457 F. Supp. 2d 969, 998-1002 (N.D. Cal. 2006) (citing *Price v. City

16  of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004)).

17       Applying this standard to the first form of injunctive relief requested, prohibiting Defendant

18  from engaging in further infringement, the Court finds the relief to be narrowly tailored to remedy

19  the harms shown by Plaintiffs and necessary to effectuate the purpose of preventing the Defendant

20  from unlawfully infringing on the Plaintiffs' marks.  The Plaintiffs have established Defendant's

21  ownership or control over all twenty-eight domain names at issue (b2do.com, bag2do.cn,

22  bag2do.com, bagdo.com, bagdo.net, bagdo2.com, bagdo2.net, bagpo.com, bagxo.com, bagxp.com,

23  do2bag.com, do2bag.net, ebagdo.com, ibagdo.com, ibagto.com, my4shop.com, my4shop.net,

24  my5shop.com, my5shop.net, myamart.com, myamart.net, myashop.cn, myashop.com, myashop.net,

25  myhshop.com, mynshop.com, myokshop.com, and myrshop.com).  Additionally, the requested

26  relief is in line with injunctive relief granted by other courts.  *See e.g., Chanel, Inc. v. Sophia

27  Zhang*, Case No. 3:09-cv-01977-MMC (N.D. Cal. Dec. 7, 2009) (including nearly identical

28  language in permanent injunction); *Chanel, Inc. v. Lin*, 2010 WL 2557503 (N.D. Cal. May 7, 2010)

United States District Court

For the Northern District of California

1   (including nearly identical language in permanent injunction).  Additionally, the broad scope of the

2   injunction is reasonable given that the Defendant has used the counterfeit marks to sell the same

3   types of goods as offered by Gucci, Bottega and Balenciaga.  *See Perfumebay.com Inc. v. eBay Inc.*,

4   506 F.3d 1165, 1177 (9th Cir. 2007) ("When the infringing use is for a similar service, a broad

5   injunction is especially appropriate").  Accordingly, the Court recommends that Plaintiffs'

6   proposed injunction be adopted in its entirety with regard to all twenty-eight websites listed in the

7   Motion for Default Judgment (b2do.com, bag2do.cn, bag2do.com, bagdo.com, bagdo.net,

8   bagdo2.com, bagdo2.net, bagpo.com, bagxo.com, bagxp.com, do2bag.com, do2bag.net,

9   ebagdo.com, ibagdo.com, ibagto.com, my4shop.com, my4shop.net, my5shop.com, my5shop.net,

10  myamart.com, myamart.net, myashop.cn, myashop.com, myashop.net, myhshop.com,

11  mynshop.com, myokshop.com, and myrshop.com).

12          As to the second form of relief requested, the transfer of the domain names to the Plaintiffs,

13  the Court also finds Plaintiffs' request to be reasonable and necessary even though it will be

14  directed in part, to entities that are not parties to this action.  This Court has specifically addressed

15  the issue of enforcing its order on a third party in the context of a similar trademark infringement

16  action and has concluded that under 15 U.S.C. § 1116, the Court is authorized to issue such an

17  order against a third party because it is necessary to effectuate the purposes of the injunction.

18  *Chanel, Inc., v. Lin*, 2010 WL 2557503, at *12 (N.D. Cal. May 7, 2010); *see also Louis Vuitton*

19  *Malletier, S.A. v. Absolutee Corp., Ltd.*, Case No. 3:09-cv-05612 MMC (N.D. Cal. April 19, 2010)

20  (ordering transfer of domain names on default judgment where plaintiff asserted claims for

21  trademark infringement and false designation of origin under Lanham Act but did not assert

22  cyberpiracy claim).  As stated above, Plaintiffs have provided evidence showing the Defendant is

23  tied to all twenty-eight websites listed in the Motion for Default Judgment (b2do.com, bag2do.cn,

24  bag2do.com, bagdo.com, bagdo.net, bagdo2.com, bagdo2.net, bagpo.com, bagxo.com, bagxp.com,

25  do2bag.com, do2bag.net, ebagdo.com, ibagdo.com, ibagto.com, my4shop.com, my4shop.net,

26  my5shop.com, my5shop.net, myamart.com, myamart.net, myashop.cn, myashop.com, myashop.net,

27  myhshop.com, mynshop.com, myokshop.com, and myrshop.com).  Therefore, the second form of

28  injunctive relief should be granted.  Finally, Plaintiffs have stipulated that the twenty-eight domain

United States District Court

For the Northern District of California

names at issue should all be transferred to Plaintiff Gucci, as it is responsible for the Plaintiffs' anti-counterfeiting programs.  Plaintiffs' Supplemental Memorandum of Law in Support of Plaintiffs' Motion for Entry of Final Default Judgment p. 9.

### 2.    Statutory Damages

The Lanham Act provides that a trademark owner may recover: (1) defendant's profits; (2) any damages sustained by the plaintiff; and (3) the costs of the action where a plaintiff has established trademark infringement.  15 U.S.C. § 1117(a).  As an alternative to seeking damages in the form of lost profits, a plaintiff may elect to receive an award of statutory damages in trademark actions involving the use of a counterfeit mark.  15 U.S.C. § 1117(c).  Under the Lanham Act, a court may award "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just."  15 U.S.C § 1117(c)(1).  A court may grant enhanced damages of up to $2,000,000 per counterfeit mark on a finding of willful infringement.  15 U.S.C. § 1117(c)(2).  Willful infringement occurs when the defendant knowingly and intentionally infringes on a trademark.  *See Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1216-1217 (9th Cir. 2003).  Willfulness can also be inferred from a defendant's failure to defend.  *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003).  If statutory damages are elected, a court has wide discretion in determining the amount of statutory damages to be awarded.  *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham*, 259 F.3d 1186, 1194 (9th Cir. 2001).  Although Section 1117(c) does not give any specific guidance as to how a court should determine an appropriate statutory damage award, many courts have looked to the following factors that are considered for the award of statutory damages under an analogous provision of the Copyright Act:

> (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff[s]; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant.

*Cartier v. Symbolix Inc.*, 544 F. Supp. 2d 316, 318 (S.D.N.Y. 2008) (quoting *John Wiley & Sons, Inc., et al. v. Kanzin Rukiz Entertainment and Promotions et al*, No. 06 Civ. 12949, 2007 WL 1695124, at*3 (S.D.N.Y. June 12, 2007)); *see also Adobe Systems Inc. v. Tilley*, No. C 09-1085

United States District Court

For the Northern District of California

1    PJH, 2010 WL 309249, at *5 (N.D. Cal. Jan. 9, 2010) ("courts in this district have also considered

2    whether the damages sought bear a plausible relationship to the plaintiff's actual damages")

3    (quotations omitted).  The Court considers these factors below.

4         First, as to *expenses saved and profits reaped* as a result of the Defendant's infringement,

5    there is no evidence in the record of Defendant Wang Huoqing's expenses saved or profits reaped

6    because the Defendant has failed to appear or otherwise defend this action.  Therefore, this factor

7    does not offer the court any guidance as to the appropriate amount of statutory damages.  As to

8    *revenues lost*, Plaintiffs have not provided any evidence of lost revenue and it may be difficult to

9    quantify such.  Therefore, this factor does not provide guidance in this case.  As to the *value of the*

10   *intellectual property*, the Plaintiffs have not provided any evidence as to the actual value of their

11   trademarks, though Ms. Feldman has stated that the Plaintiffs' Marks are "vital" to their businesses

12   and represent "virtually the entire respective value of the companies and their associated images."

13   Feldman Decl. in Support of FDJ ¶ 9.   As to the *deterrent effect on others beside defendant*, a

14   significant award to the Plaintiffs would clearly have some degree of deterrent effect on other

15   infringers.  As to *whether defendant's conduct was willful*, the incomplete registration information

16   for the domain names, the failure to appear after being properly served, and the blatant use of the

17   Plaintiffs' names suggest that the Defendant's conduct is willful and not innocent.  As to *whether*

18   *the defendant has cooperated in providing records*, as stated above, the Defendant has failed to

19   appear or otherwise defend this action.  Therefore, this factor is not applicable.  As to the *potential*

20   *for discouraging the defendant*, although a smaller damage award would probably be persuasive in

21   deterring the Defendant, the Plaintiffs have alleged that he resides in the People's Republic of

22   China and therefore any judgment, regardless of the amount of damages imposed may not have a

23   deterring effect because enforcing the judgment may prove difficult.  Weighing these factors, the

24   Court concludes that Plaintiffs are entitled to a significant award of statutory damages.  Below, the

25   Court considers the appropriate methodology for setting a dollar amount on those damages.

26        In the Motion, Plaintiffs have requested a damage award based upon the number of

27   registered marks, multiplied by the types of counterfeit goods sold (e.g. handbags, sunglasses,

28   jewelry, etc.), multiplied by $3,000, that is, the amount of damages sought as to each type of good.

**United States District Court**
For the Northern District of California

1    This methodology gives rise to damages in the amounts of  $594,000 (Gucci), $3,000 (Bottega),

2    and $9,000 (Balenciaga).   The Court finds that this methodology is problematic for two reasons.

3    First, Plaintiffs have not provided evidence showing that each registered mark was used on each

4    type of good.  In particular, it is not possible to determine from the print-outs provided by Plaintiffs

5    which particular marks are infringed by the products shown or even whether each type of product

6    for which damages are sought is shown.  Second, even if all twenty-two trademarks have been

7    infringed in each type of product, the Court notes that many of the Marks appear very similar.

8    Other courts that have addressed this issue have concluded that where the infringing acts are based

9    on very similar marks, it may be appropriate to take this fact into account when calculating

10   statutory damages to ensure that the Plaintiffs do not receive a windfall.  *See*, *e.g.*, *Adobe Systems,*

11   *Inc. v. Tilley*,  2010 WL 309249, at *5 (N.D. Cal. Jan. 19, 2010); 2-5 Gilson on Trademarks § 5.19

12   ("If there are multiple marks involved, rather than give plaintiff[s] a windfall, courts tend to award

13   an amount without multiplying it by the number of marks or to lower the award given per mark");

14   *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 584-85 (E.D. Pa. 2002) (noting

15   "[i]n similar cases concerning multiple marks, courts have been inclined to either award the

16   maximum without multiplication or to lower the per mark award").

17          In light of these concerns, the Court adopts the methodology used by Judge Chen in a

18   similar situation to calculate damages.[11]  *See Chanel, Inc. v. Casondra Tshimanga*, Case No. 3:07-

19   cv-03592 EMC (N.D. Cal. Jul. 15, 2008) (involving websites registered to Tshimanga that sold

20   counterfeit goods that infringed marks registered to Chanel where a number of the infringed marks

21   were identical or substantially similar to other marks for which Chanel sought recovery).  In

22   *Tshimanga*, Judge Chen chose to eliminate substantially similar trademarks from the damages

23   calculation and to then use a higher per violation award for a lesser number of violations.  As a

24   result, damages were reduced from the requested amount of $678,000 to $450,000.

25          Applying that methodology to this case, there are eight Gucci marks which are substantially

26   similar to other Marks for which Gucci is requesting damages.  Removing these Marks for the

27   _____

28       [11]At the October 8 hearing, Plaintiffs stipulated that they did not object to the Court's application of this framework to determine the amount of damages in this case.

purpose of calculating damages would leave ten Gucci Marks upon which to base their damages.[12] Bottega has only requested damages with regard to one Mark and therefore, there are no other substantially similar Marks to remove.  Balenciaga has one Mark which is substantially similar to another one of the Marks for which it is requesting damages and therefore, for calculation purposes, Balenciaga's Marks would be reduced to two.[13]  At the same time, the Court finds that the amount per violation should be increased from $3,000 (as requested by Plaintiffs) to $4,000, which is a relatively low per-violation amount, given that Defendant's infringement was willful.  Calculating Plaintiffs' damages with these adjustments results in a total damage award of $452,000.[14] This award represents 74.6% of the Plaintiffs' original request of $606,000.[15]

### 3. Costs

Under the Lanham Act, a plaintiff that prevails on a claim under § 1125(a) is entitled to costs.  15 U.S.C. § 1117(a).  Plaintiffs have prevailed on their false designation of origin claim under § 1125(a) and therefore are entitled to costs.  Plaintiffs state that they have incurred costs in the amount of $700.00, consisting of the filing fee ($350.00) and the process server fees ($350.00). *See* Kearns Decl. ¶13; Holmes Decl. ¶ 8.

Under Civil Local Rule 54-3, an award of costs may include the clerk's filing fee and fees for service of process "to the extent reasonably required and actually incurred."  Therefore, Plaintiffs' costs of $350.00 in filing fees and $350.00 for service, totaling $700.00, are allowable

---

[12]   Trademark registration numbers 1,097,555 and 3,660,040 appear substantially similar to registration number 1,097,483.  Registration numbers 1,168,477 and 1,200,991 appear substantially similar to registration number 0,876,292.  Registration numbers 3,039,630 and 3,376,129 appear substantially similar to registration number 3,039,629.  Registration number 3,072,547 appears substantially similar to 3,072,549.  Registration number 3,470,140 appears substantially similar to 3,039,631.  At the October 8 hearing, Plaintiffs stipulated to removing the substantially similar marks for the purposes of calculating statutory damages.  Plaintiffs' Supplemental Memorandum of Law in Support of Plaintiffs' Motion for Entry of Default Judgment, p.8.

[13] Trademark registration number 3,344,631 appears substantially similar to registration number 3,044,207.

[14]   For Gucci: 10 trademarks x 11 types of goods x $4,000 = $440,000.  For Bottega: 1 trademark x 1 type of good x $4,000 = $4,000.  For Balenciaga: 2 trademarks x 1 type of good x $4,000 = $8,000.

[15]   Judge Chen's methodology produced a result that was approximately 66% of the requested amount in *Tshimanga*.

**United States District Court**

For the Northern District of California

1  and should be awarded in full and apportioned as follows: $233.34 for Gucci, $233.33 for Bottega,

2  and $233.33 for Balenciaga, as requested in Plaintiffs' Proposed Judgment and Permanent

3  Injunction.  Proposed Judgment and Permanent Injunction at 5.

4        **4.**        **Prejudgment Interest**

5        Plaintiffs have requested an award of prejudgment interest in this case and the Court

6  concludes the Plaintiffs are entitled to receive an award of prejudgment interest.  Under 15 U.S.C. §

7  1117(b), assuming the court has found intentional use of a mark or designation as defined in

8  section 1116(d) of the same title, "the court may award prejudgment interest on such amount at an

9  annual interest rate established under section 6621(a)(2) of Title 26,[16] beginning on the date of

10  service of the claimant's pleadings setting forth the claim for such entry of judgment and ending on

11  the date such entry is made, or for shorter time as the court considers appropriate."  15 U.S.C. §

12  1117(b).

13        Here, the Summons, Complaint and First Amended Complaint were all served on March 13,

14  2010 and therefore, the Court calculates prejudgment interest from that date to the date of this

15  Report and Recommendation. Using an annual rate of 3.64% ,[17] Plaintiffs should be awarded

16

17

18

19

20

21

22

23

---

24      [16] Section 6621(a)(2) provides that the prejudgment rate shall be equal to the Federal short-term

25  rate as defined by the Secretary in the first month of each calendar quarter plus 3 percentage points.

26      [17]  The short-term rate for March, 2010 was 0.64%, corresponding to the month in which the complaint was served in this action.  (This figure was determined based on information from

27  http://www.irs.gov/pub/irs-drop/rr-10-08.pdf).  Thus, the rate used to calculate Plaintiffs' prejudgment interest should be 3.64%. In their Supplemental Memorandum, Plaintiffs stipulated to the prejudgment

28  interest rate of 3.64%.  Plaintiffs' Supplemental Memorandum of Law in Support of Plaintiffs' Motion for Entry of Final Default Judgment, p. 9 n.4.

$13,117.16 in prejudgment interest.[18]  The prejudgment interest should be apportioned as follows: for Gucci, $12,768.92[19]; for Bottega, $116.08[20]; and for Balenciaga, $232.16.[21]

## IV.  CONCLUSION

It is recommended that the Court GRANT the Motion.  Default judgment should be entered against the Defendant on Plaintiffs' trademark infringement and false designation of origin claims. The Court should award statutory damages to each Plaintiff in the following amounts: for Gucci America, Inc. $440,000; for Bottega Veneta International S.A.R.L. $4,000; and for Balenciaga S.A. $8,000.  The Court should award prejudgment interest to each Plaintiff in the following amounts: for Gucci America, Inc. $12,768.92; for Bottega Veneta International S.A.R.L. $116.08; and for Balenciaga S.A. $232.16.  Additionally, the Court should award $233.33 in costs to each Plaintiff on the basis of Defendant's trademark infringement, for which Defendant shall be liable.

A permanent injunction should be entered against the Defendant as follows:

Defendant and his respective officers, agents, servants, employees, and attorneys, and all persons acting in concert and participation with him are hereby permanently restrained and enjoined from:

(a) manufacturing or causing to be manufactured, importing, advertising, or promoting, distributing, selling or offering to sell counterfeit and infringing goods using the Plaintiffs' Marks;

(b) using the Plaintiffs' Marks in connection with the sale of any unauthorized goods;

(c) using any logo, and/or layout which may be calculated to falsely advertise the services or products of Defendant offered for sale or sold via the websites: b2do.com, bag2do.com, bag2do.cn, bag2do.com, bagdo.com, bagdo.net, bagdo2.com, bagdo2.net, bagpo.com, bagxo.com, bagxp.com, do2bag.com, do2bag.net, ebagdo.com, ibagdo.com, ibagto.com, my4shop.com, my4shop.net, my5shop.com, my5shop.net, myamart.com, myamart.net, myashop.cn, myashop.com, myashop.net, myhshop.com, mynshop.com, myokshop.com, and myrshop.com

---

[18]  The prejudgment interest figure of $13,117.16 was computed by converting the annual rate of 3.64% to a daily rate of $9.97260274 \times 10^{-5}$ ($.0364 \div 365$), then multiplying by 291, representing the 291 days between service of the complaint in this action (March 13, 2010) and the date of this Report and Recommendation, then multiplying by $452,000.00, representing the total statutory damages to be awarded.

[19] $9.97260274 \times 10^{-5} \times \$440,000.00 = \$12,768.92$

[20] $9.97260274 \times 10^{-5} \times \$4,000.00 = \$116.08$

[21] $9.97260274 \times 10^{-5} \times \$8,000.00 = \$232.16$

United States District Court
For the Northern District of California

and/or any other website or business, as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiffs;

(d) falsely representing himself as being connected with Plaintiffs, through sponsorship or association;

(e) engaging in any act which is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendant offered for sale o[r] sold via the websites: b2do.com, bag2do.cn, bag2do.com, bagdo.com, bagdo.net, bagdo2.com, bagdo2.net, bagpo.com, bagxo.com, bagxp.com, do2bag.com, do2bag.net, ebagdo.com, ibagdo.com, ibagto.com, my4shop.com, my4shop.net, my5shop.com, my5shop.net, myamart.com, myamart.net, myashop.cn, myashop.com, myashop.net, myhshop.com, mynshop.com, myokshop.com, and myrshop.com and/or any other website or business are in any way endorsed by, approved by, and/or associated with Plaintiffs;

(f) using any reproduction, counterfeit, copy or colorable imitation of the Plaintiffs' Marks in connection with the publicity, promotion, sale or advertising of any goods sold by Defendant via the websites: b2do.com, bag2do.cn, bag2do.com, bagdo.com, bagdo.net, bagdo2.com, bagdo2.net, bagpo.com, bagxo.com, bagxp.com, do2bag.com, do2bag.net, ebagdo.com, ibagdo.com, ibagto.com, my4shop.com, my4shop.net, my5shop.com, my5shop.net, myamart.com, myamart.net, myashop.cn, myashop.com, myashop.net, myhshop.com, mynshop.com, myokshop.com, and myrshop.com and/or any other website or business, including, without limitation, footwear, belts, sunglasses, handbags, wallets, hats, necklaces, bracelets, scarves, ties, and/or umbrellas;

(g) affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent goods offered for sale or sold by Defendant via the websites: b2do.com, bag2do.cn, bag2do.com, bagdo.com, bagdo.net, bagdo2.com, bagdo2.net, bagpo.com, bagxo.com, bagxp.com, do2bag.com, do2bag.net, ebagdo.com, ibagto.com, my4shop.com, my4shop.net, my5shop.com, my5shop.net, myamart.com, myamart.net, myashop.cn, myashop.com, myashop.net, myhshop.com, mynshop.com, myokshop.com, and myrshop.com and/or any other website or business, as being those of Plaintiffs or in any way endorsed by Plaintiffs;

(h) offering such goods in commerce;

(i) otherwise unfairly competing with Plaintiffs;

(j) secreting, destroying, altering, removing, or otherwise dealing with the unauthorized products or any books or records which contain any information relating to the importing, manufacturing, producing, distributing, circulation, selling, marketing, offering for sale, advertising, promoting, renting or displaying of all unauthorized products which infringe the Plaintiffs' Marks; and

(k) effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth above.

Finally, the Court should further order as follows:

29

United States District Court

For the Northern District of California

1
2
3
4
5
6
7

(l) In order to give practical effect to the Permanent Injunction, the websites: b2do.com, bag2do.cn, bag2do.com, bagdo.com, bagdo.net, bagdo2.com, bagdo2.net, bagpo.com, bagxo.com, bagxp.com, do2bag.com, do2bag.net, ebagdo.com, ibagdo.com, ibagto.com, my4shop.com, my4shop.net, my5shop.com, my5shop.net, myamart.com, myamart.net, myashop.cn, myashop.com, myashop.net, myhshop.com, mynshop.com, myokshop.com, and myrshop.com are hereby ordered to be immediately transferred by Defendant, his assignees and/or successors in interest or title, and the Registrars to Plaintiff Gucci's control.  To the extent the current Registrars do not facilitate the transfer of the domain names to Plaintiffs' control within ten (10) days of receipt of this judgment, the United States based Registry shall, within thirty (30) days, transfer the Subject Domain Names to a United States based Registrar of Plaintiffs' choosing, and that Registrar shall transfer the Subject Domain Names to Plaintiff Gucci; and

8
9
10
11
12

(m) Upon Plaintiffs' request, the top level domain (TLD) Registries for the websites: b2do.com, bag2do.cn, bag2do.com, bagdo.com, bagdo.net, bagdo2.com, bagdo2.net, bagpo.com, bagxo.com, bagxp.com, do2bag.com, do2bag.net, ebagdo.com, ibagdo.com, ibagto.com, my4shop.com, my4shop.net, my5shop.com, my5shop.net, myamart.com, myamart.net, myashop.cn, myashop.com, myashop.net, myhshop.com, mynshop.com, myokshop.com, and myrshop.com shall place the websites on Registry Hold status within thirty (30) days of receipt of this Order, thus removing them from the TLD zone files maintained by the Registries which link the websites to the IP addresses where the associated websites are hosted.

13
14

Dated: January 3, 2011

15
16

_____
JOSEPH C. SPERO
United States Magistrate Judge

17
18
19
20
21
22
23
24
25
26
27
28